Roy GIBBONS, W. J. Rider, and Melvin Kahle, Appellants,

v.

CORPORATION COMMISSION of the State of Oklahoma and General American Oil Company of Texas, Appellees.

No. 50760.

Supreme Court of Oklahoma.

June 26, 1979.

H. B. Watson, Jr., Richard K. Books, David Wick, Jr., Oklahoma City, for appellants.

Harvey H. Cody, Jr., Oklahoma City, for appellee Oklahoma Corporation Commission.

Fisher Ames, Oklahoma City, for appellee General American Oil Co. of Texas.

IRWIN, Vice Chief Justice.

The Corporation Commission extended the purview of a previous order so as to establish 640-acre drilling and spacing units for the production of gas and gas condensate from the Deese common source of supply in an area including section 11, T5N, R8W, Grady County. General American Oil Company (appellee) completed a producing well in the SE ¼ of section 11. This well, referred to as the Gibbons well, was classified by appellee as an oil well.

Appellants, owners of the mineral interest under the SE ¼ of section 11, filed an application with the Corporation Commission requesting that the 640-acre drilling and spacing unit for the production of gas in section 11 be modified and that 160-acre

drilling and spacing units be established. Prior to the time appellants' application could be heard, appellee filed an application for permission to drill an additional well in the west half of section 11.

The applications were consolidated, a hearing was conducted, and the trial examiner submitted his report. The Corporation Commission followed the recommendation of the trial examiner, approving appellee's application to drill an additional well in the SE ¼ of the NW ¼ of section 11, and denying appellants' application to establish 160-acre drilling and spacing units for section 11. Appellants appealed.

■ The 640-acre drilling and spacing order could be modified only upon substantial evidence which showed a change in conditions, or a change in knowledge of conditions, arising since the 640-acre spacing order became final. *Phillips Petroleum Co. v. Corporation Commission,* Okl., 461 P.2d 597 (1969). Appellants and appellee each presented one expert witness, and each testified there had been a change in conditions or a change in knowledge of conditions arising since the 640-acre spacing order became final. We hold the requirements for modification of the 640-acre spacing order as set forth in *Phillips Petroleum Co.* were satisfied, and the Commission had the authority to modify its previous spacing order.

The Gibbons well in section 11 was drilled to a total depth of 12,050 feet and completed in the Deese formation. Perforations were made from $11,528 to 11,562 feet. The Deese formation is approximately 3,500 feet thick and extends from the base of the Hoxbar to the top of the Dornick Hills. Both expert witnesses testified that the Gibbons well was producing from a predominately oil reservoir and that it would not drain an area in excess of 160-acres. It had a gas-oil ratio of 759/1 when first produced and three months later the gas-oil ratio had increased to 3000/1.

The Duncan well, located in section 14, being a south offset to the Gibbons well was completed in the Deese formation as an oil well. This well is approximately 1,200 feet deeper into the Deese formation than the Gibbons well. The nearest gas production from the Deese formation is about 2 miles south of the Gibbons well in sections 22 and 23 and the wells are located on the Chickasha structure.

Appellee's witness testified that the zone of the Deese productive in the Gibbons well could be expected to underlie the entire section. According to him other wells in the present unit if drilled and perforated to this zone would be similar to the Gibbons well. Appellee's plan of development evidenced an intent to test this zone in other areas of the section, with the potential for drilling of three additional wells. However, because he believed that deeper portions of the Deese would be productive of gas, appellee's witness believed that a "gas" unit was proper in this area. This opinion was also motivated by his view that if the 640-acre spacing were changed to 160-acre in section 11, that appellee would lose 42 net acres on the basis of a farmout agreement in the NW ¼ and a net 55 acres in the NE ¼ due to the same sort of farmout agreement.

Nevertheless he admitted that the deeper zone of the Deese from which he anticipated gas production in section 11 was a different reservoir from that which is productive in the present well. The following excerpt from the testimony is particularly instructive:

Q: "In the event that another well were drilled in section 11 to the deeper beds in the Deese series and gas was produced from some of these deeper beds that would be comparable or that you could correlate with the deeper gas production that you've mentioned elsewhere in this area, in your opinion could that gas be produced from the same reservoir or same common accumulation of hydrocarbons as that being produced from what we'll call the upper zone which is the presently producing zone?"

A: "No, it would be separate reservoirs."

Appellants' witness was of the view there would be no deeper gas production in appellee's proposed well in the NW ¼ of section 11 because the Duncan well drilled through the entire Deese formation and there was no gas completion. The Duncan well is located between the Gibbons well and the gas wells in the Chickasha structure of the south. Appellee's witness recognized that a good portion of the section which was productive in the Chickasha structure was absent in the Duncan well area but he was of the opinion there was a major fault in the Deese formation.

Appellants' witness testified that vacating the 640-acre spacing order and establishing 160-acre drilling and spacing units for section 11 would tend to protect the correlative rights of the parties; would assist in recovery of the hydrocarbons; and tend to prevent waste.

Appellee suggests that our decision in *Meredith v. Corporation Commission,* Okl., 368 P.2d 828 (1961), was the obvious basis of the Commission's order. *Meredith* involved a dispute relating to the distribution of royalties after an oil well had been drilled in an area designated as a common supply for gas and a 640-acre drilling and spacing unit had been established. Although the *Meredith* Court said the fact that drilling an oil well in an area spaced for gas did not compel a change in spacing, the Court recognized that 52 O.S.1951, sec. 87.1, (since amended) provided an administrative remedy in such instances.

In *Harper Oil Company v. Hayes,* Okl., 431 P.2d 387 (1967) we reversed an order of the Commission wherein the Commission found that a 640-acre drilling and spacing order for gas in the Mississippian formation did not include within its purview an oil well drilled into the Lower Osage formation. We reversed on the theory that there was not substantial evidence to support the Commission's finding that there were two separate formations. The failure of substantial evidence to support the Commis-

sion's order was the basis for reversal in *Harper* and not because the Commission did not have the authority to modify or change a previous spacing order.

The evidence in the case at bar discloses that the Gibbons well is producing from a predominately oil reservoir which is completely separate from any source of supply for the production of gas. It is undisputed that the well will not drain an area in excess of 160 acres. It is also undisputed that other wells drilled into the same zone will be comparable to the Gibbons well and will not drained an area in excess of 160 acres. Although there is substantial evidence to support the Commission's order permitting appellee to drill an additional well in the NW ¼, there is no substantial evidence supporting the Commission's order denying appellants' application for a modification of the 640-acre drilling and spacing order. It may be that appellants are not entitled to all the relief requested, but the order denying them any relief is not supported by substantial evidence.

Order in cause number 46,889 affirmed as to allowing appellee's application to drill an additional well in the NW ¼ of section 11, and cause number 46,681 reversed in denying appellants any relief in reference to their application.

LAVENDER, C. J., and WILLIAMS, HODGES, BARNES, SIMMS, HARGRAVE and OPALA, JJ., concur.